**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 12-21089-CIV-ROSENBAUM/SELTZER**

J.G.,

      Plaintiff,

v.

CARNIVAL CORPORATION, d/b/a
CARNIVAL CRUISE LINES, INC.,

      Defendant.

_____/

**ORDER DENYING PLAINTIFF'S *DAUBERT* MOTION**

      This matter is before the Court upon Plaintiff's *Daubert* Motion to Limit or Preclude the

Trial Testimony of Wayne B. Black [D.E. 130].  After careful consideration of the pending Motion,

all filings and exhibits in support thereof and in opposition thereto, and being otherwise duly advised

in the premises, the Court finds Wayne B. Black ("Black") to be a qualified expert and, thus, denies

Plaintiff's motion.

**I. BACKGROUND**

      Plaintiff J.G. brings this action against Defendant Carnival Corporation based on events that

allegedly took place while Plaintiff was a passenger on Defendant's cruise ship *Sensation* in April

2011.  D.E. 16.  Although many of the facts of this incident are in dispute, the parties' pleadings

sketch a general outline of what happened.  Plaintiff, who was a minor at the time of the cruise,

allegedly dropped a container of what appeared to one of the ship's security officers to be marijuana.

-1-

The security officer, Mayank Thapa, picked up the container. Thapa later advised his supervisor, Assistant Chief Security Officer Manuel Depositario of the incident; Depaositario, in turn, informed his supervisor, Chief Security Officer Rajendra Negi. D.E. 131, ¶¶ 11-13; D.E. 142, ¶¶ 3-5.

Negi directed Depositario to perform a search of Plaintiff's cabin for any other illegal substances. Depositario, accompanied by Thapa, security officer Leticia Juanino, and Assistant Housekeeping Manager Redentor Yuzon, proceeded to Plaintiff's cabin and conducted a search. D.E. 131, ¶¶ 14-15; D.E. 142, ¶ 5. The security personnel also took statements from Plaintiff. D.E. 131, ¶ 17; D.E. 142, ¶ 6-7. The parties dispute who was in Plaintiff's cabin at the time of the statement and search, as well as how long those present stayed.

During the search, Juanino also conducted a "pat down" search of Plaintiff. D.E. 131, ¶ 20; D.E. 142, ¶ 12. According to Plaintiff, Juanino then required Plaintiff to lift her dress, remove her underwear and a tampon, and submit to a visual cavity search. D.E. 142, ¶ 14. Defendant contends that Plaintiff voluntarily removed her clothes and tampon in order to expedite the search and prove that she was not carrying any other contraband. D.E. 131, ¶¶ 21-23.

Subsequent to the search, Defendant's security personnel notified authorities of the Bahamas that Plaintiff had been found in possession of marijuana. D.E. 131, ¶ 25; D.E. 142, ¶ 21. Plaintiff was removed from the ship and taken into custody by Bahamian authorities. D.E. 131, ¶ 26; D.E. 142, ¶ 22-23.

Plaintiff's Amended Complaint alleges three counts that, among other things, challenge the reasonableness of Defendant's security policies, as well as the training, conduct, and supervision of Defendant's security personnel. D.E. 16 (Counts I, II, VI). In response, Defendant has retained

Wayne B. Black to provide testimony as a security expert.  D.E. 139 at 2.  Defendant proffers that

Black will testify that

> the actions of [Defendant]'s employees on the night of the alleged
> incident were reasonable and appropriate under the [c]ircumstances.
> He will further testify that [Defendant]'s security policies and
> procedures, and the training provided to its security officers, is
> reasonable and appropriate.  Mr. Black may also provide rebuttal
> expert opinion concerning opinions rendered by Plaintiff's experts.
> He will testify based on his relative experience, expertise and
> knowledge, and review of documents.

D.E. 130 at 1-2.

Plaintiff has filed the current Motion to preclude Black's testimony at trial.  In support of her

Motion, Plaintiff attacks Black's status as an expert under *Daubert v. Merrell Dow Pharms., Inc.*,

509 U.S. 579 (1993).  *Id.* at 5.  Although Plaintiff's Motion is not entirely clear, it appears that

Plaintiff is asserting that Black is not qualified to testify as an expert in this case and that his

testimony is unhelpful.  *Id.* ¶¶ 13-14.

## II. ANALYSIS

When a party proffers the testimony of an expert under Rule 702 of the Federal Rules of

Evidence, the party offering the expert testimony bears the burden of laying the proper foundation,

and that party must demonstrate admissibility by a preponderance of the evidence.  *Rink v.*

*Cheminova, Inc.*, 400 F.3d 1286, 1291-92 (11th Cir. 2005); *Allison v. McGhan Med. Corp.*, 184 F.3d

1300, 1306 (11th Cir. 1999).  In making the determination of whether expert testimony and any

report prepared by the expert may be admitted, the Court engages in a three-part inquiry of whether

(1) the expert is qualified to testify competently regarding the matters he intends to address; (2) the

methodology by which the expert reaches his conclusions is sufficiently reliable; and (3) the

testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue. *City of Tuscaloosa v. Harcros Chems., Inc.*, 158 F.3d 548, 562 (11th Cir. 1998) (citing *Daubert*, 509 U.S. at 589).  The Eleventh Circuit refers to each of these requirements as the "qualifications, "reliability," and "helpfulness" prongs. *United States v. Frazier*, 387 F.3d 1244, 1260 (11th Cir. 2004). While some overlap exists among these requirements, the court must individually analyze each concept. *Id.*

In a district court's analysis under *Daubert*, the court must take on the role of a gatekeeper, but this role "is not intended to supplant the adversary system or the role of the jury." *Quiet Tech. DC-8, Inc. v. Hurel-Dubois, UK Ltd.*, 326 F.3d 1333, 1341 (11th Cir. 2003) (quoting *Maiz v. Virani*, 253 F.3d 641, 666 (11th Cir. 2001)).  Under this function, the district court must "ensure that speculative, unreliable expert testimony does not reach the jury." *McCorvey v. Baxter Healthcare Corp.*, 298 F.3d 1253, 1256 (11th Cir. 2002).  But "it is not the role of the district court to make ultimate conclusions as to the persuasiveness of the proffered evidence." *Quiet Tech. DC-8, Inc.*, 326 F.3d at1341; *Maiz*, 253 F.3d at 666 (quoting *Alison*, 184 F.3d at 1311).  Thus, the district court cannot exclude an expert because it believes the expert lacks personal credibility. *Rink*, 400 F.3d at 1293, n.7.  To the contrary, "vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Quiet Tech. DC-8, Inc.*, 326 F.3d at 1341 (quoting *Daubert*, 509 U.S. at 596).

Here, Defendant challenges the expert testimony of Black on the qualifications and helpfulness prongs of the *Daubert* test.  Accordingly, the Court considers each prong in turn.

**A. Black Is Qualified to Testify as a Security Expert**

An expert may be qualified "by knowledge, skill, experience, training, or education." *Furmanite Am., Inc. v. T.D. Williamson*, 506 F. Supp. 2d 1126, 1129 (M.D. Fla. 2007) (citing Fed. R. Evid. 702). Moreover, "[a]n expert is not necessarily unqualified simply because [his] experience does not precisely match the matter at hand." *Id.* (citing *Maiz*, 253 F.3d at 665).

Determining whether a witness is qualified to testify as an expert "requires the trial court to examine the credentials of the proposed expert in light of the subject matter of the proposed testimony." *Jack v. Glaxo Wellcome, Inc.*, 239 F. Supp. 2d 1308, 1314-16 (N.D. Ga. 2002). Under this inquiry, an expert must satisfy a relatively low threshold, beyond which qualification becomes a credibility issue for the jury. *Martinez v. Altec Indus., Inc.*, 2005 WL 1862677, *3 (M.D. Fla. Aug. 3, 2005); *see also Rushing v. Kansas City S. Ry. Co.*, 185 F.3d 496, 507 & n.10 (5th Cir. 1999) (explaining that after an individual satisfies the relatively low threshold for qualification, vigorous cross examination is the appropriate means for attacking the credibility of an expert's testimony), *superseded by rule on other grounds as recognized in Mathis v. Exxon Corp.*, 302 F.3d 448, 459 n.16 (5th Cir. 2002). After the district court undertakes a review of all of the relevant issues and of an expert's qualifications, the determination regarding qualification to testify rests within the district court's discretion. *See Berdeaux v. Gamble Alden Life Ins. Co.*, 528 F.2d 987, 990 (5th Cir. 1976).[1]

---

[1] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir. 1981), the Eleventh Circuit adopted as binding all decisions the former Fifth Circuit rendered prior to the close of business on September 30, 1981.

Based on Black's biography from his website and a summary of his qualifications adduced at his deposition,[2] Black began his career in law enforcement with the Montgomery County, Ohio, Sheriff's Office in 1969, eventually rising to the levels of sergeant and "narcotics supervisor." D.E. 130, ¶ 5.   In 1974, he was hired by the precursor of the Miami-Dade County, Florida, Police Department, where he served as a narcotics detective. *Id.*  Six years later, Black took a position as a law enforcement group supervisor in the Public Corruption Organized Crime Group of the State Attorney's Office. *Id.*  In 1984, he left that position in order to open his private security firm, Wayne Black & Associates. *Id.*  Among the services offered by Black's firm is security training. D.E. 139-2 at 3.

Despite Black's professional credentials, Plaintiff points to several portions of Black's deposition in which he states that he has not trained cruise-ship security personnel or published any articles concerning cruise-ship security, and he is not familiar with Defendant's own security manual. D.E. 130 ¶¶ 6-10.  Further, although Black has testified in the past as a security expert in both state and federal court, Plaintiff notes that Black concedes that he has never testified in a cruise-ship-related case. *Id.* ¶¶ 7, 10.

Based on these facts, Plaintiff argues that Black is unqualified to testify as to the reasonableness of Defendant's security policies, procedures, and practices. But the threshold for an expert's qualifications is a relatively low one.  Black possesses over forty years of law-enforcement and private-security experience, much of it dealing with narcotics investigations.  Black, through his firm, is also involved in security training.  Plaintiff does not contest that Black has this experience.

_____

[2] Plaintiff submitted this information along with her Motion and does not contest the accuracy of it.

Accordingly, the Court finds that Defendant has easily satisfied the low threshold for demonstrating under *Daubert* that Black is qualified to testify on security-related policies and practices.

Nor does the Court agree with Plaintiff's suggestion that allowing Black to testify without cruise-ship-related experience would be a "sham." Plaintiff has not shown that cruise-ship security is so vastly unrelated to security in other areas as to render Black's expertise inapplicable and negate his qualifications as an expert in this case. The extent of Black's unfamiliarity with cruise ships goes, instead, to the weight and credibility of his testimony and is, therefore, appropriately a subject for Plaintiff's vigorous cross examination at trial.

## B. Black's Testimony Will Not Mislead the Jury

According to the Eleventh Circuit, expert testimony is helpful to the trier of fact only "if it concerns matters that are beyond the understanding of the average lay person." *Frazier,* 387 F.3d at 1262. Moreover, where an expert opinion has a tendency to confuse the trier of fact, it may not satisfy the helpfulness prong. *See id.* at 1263. "Because of the powerful and potentially misleading effect of expert evidence," judges must take care not to allow misleading and prejudicial opinions to influence the finder of fact. *See id.*; *see also Cook ex rel. Estate of Tessier v. Sheriff of Monroe Cty.*, 402 F.3d 1092, 1111 (11th Cir. 2005) (citing *Frazier*, 387 F.3d at 1263).

Plaintiff makes no argument that security-related testimony is not beyond the understanding of the average lay person, and the Court agrees that such testimony is of the type appropriately provided by experts. Rather, Plaintiff argues in her Motion that "Black's testimony will not assist the trier of fact, but will only mislead the Court by allowing testimony that is incompetent, unsubstantiated, and the prejudicial [e]ffect of which is substantially outweighed by any probative value it may have." D.E. 130, ¶ 14. Beyond this conclusory assertion, though, Plaintiff offers no

explanation of how Black's testimony will be misleading.  If Plaintiff means to suggest that Black's testimony will be misleading because he is unfamiliar with the allegedly unique security circumstances found on cruise ships, the Court is confident that Plaintiff can point out—and that a jury can comprehend—any disconnect between Black's expertise and the reality of cruise-ship security.

### III. CONCLUSION

For the foregoing reasons, it is **ORDERED and ADJUDGED** that Plaintiff's *Daubert* Motion to Limit or Preclude the Trial Testimony of Wayne B. Black [D.E. 130] is **DENIED**.

**DONE and ORDERED** in Fort Lauderdale, Florida, this 27th day of February 2013.

_____
ROBIN S. ROSENBAUM
UNITED STATES DISTRICT JUDGE

Copies to:

The Honorable Barry S. Seltzer
Counsel of record

-8-