UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 12-21089-CIV-ROSENBAUM/SELTZER

J.G.,

    Plaintiff,

v.

CARNIVAL CORPORATION, d/b/a
CARNIVAL CRUISE LINES, INC.,

    Defendant.
_____/

## ORDER

This matter is before the Court upon Defendant's Motion for Partial Summary Judgment on Plaintiff's Claim for Punitive Damages [D.E. 131]. After careful consideration of the pending Motion, all filings and exhibits in support thereof and in opposition thereto, and the record in this case, and being otherwise duly advised in the premises, the Court denies Defendant's motion for summary judgment on the punitive damages claims.

### I. BACKGROUND AND FACTS

Plaintiff J.G. brings this action against Defendant Carnival Corporation based on events that allegedly took place while Plaintiff was a seventeen-year-old passenger on Defendant's cruise ship *Sensation* in April 2011. D.E. 16. Specifically, Plaintiff brings negligence and direct liability claims against Carnival for an interrogation and search, including an alleged strip search, of Plaintiff, in response to accusations that Plaintiff illicitly brought marijuana onboard the vessel. *Id.* Plaintiff

alleges liability based on Carnival's own negligence, as well as based on the conduct of Carnival's employees. *Id.* Plaintiff seeks "any and all damages allowable under the law," including punitive damages. *Id.* Defendant's summary judgment motion challenges only Plaintiff's entitlement to punitive damages.

Although many of the facts of this incident are in dispute, the parties' statements of material facts do reveal certain undisputed facts. Plaintiff, who was a minor at the time of the cruise, allegedly dropped a container of what appeared to one of the ship's security officers to be marijuana. D.E. 131, ¶ 10; D.E. 142, ¶¶ 2-3. The security officer, Mayank Thapa, picked up the container. D.E. 131, ¶ 11; D.E. 142, ¶ 3. Thapa later advised his supervisor, Assistant Chief Security Officer Manuel Depositario, of the incident; Depositario, in turn, informed his supervisor, Chief Security Officer Rajendra Negi. D.E. 131, ¶ 13; D.E. 142, ¶ 5.

Negi directed Depositario to perform a search of Plaintiff's cabin for any other illegal substances and to obtain a statement from Plaintiff. D.E. 131, ¶ 14; D.E. 131-6 at 4:6-5:7;[1] D.E. 142, ¶ 5. Thereafter, Depositario, Thapa, security officer Leticia Juanino, and Assistant Housekeeping Manager Redentor Yuzon conducted a search of Plaintiff's cabin. D.E. 131, ¶¶ 14-15; D.E. 142, ¶ 5. One or more of the three security personnel also took statements from Plaintiff. D.E. 131, ¶ 17; D.E. 142, ¶ 6-7. The parties dispute which of the security personnel were located inside or near the cabin at various points during the course of taking Plaintiff's statement and conducting the search, but for the purposes of this Motion, these disputes are immaterial.

---

[1] The parties' depositions contain two page-numbering systems—the deposition's original page numbers and the one imprinted across the top of every page by the Court's CM/ECF system. For the sake of consistency, this Order refers to the page number left by the Court's CM/ECF system. All line-number references are taken from the depositions themselves.

Carnival has set forth an internal security policy that "statement[s] should not be taken from a person under the age of 18 years unless in the presence of their parents or legal guardians." D.E. 154-1. Plaintiff's mother was not present for the taking of Plaintiff's statement. *See* D.E. 142, ¶¶ 7, 9; D.E. 155, ¶ 7. Although Plaintiff's aunt was there for a portion of the events, the parties dispute whether the aunt was present when information was first taken from Plaintiff or when the search began. D.E. 131, ¶¶ 16-17; D.E. 142, ¶ 8.

During the cabin search, Depositario instructed Juanino to conduct a "pat down" search of Plaintiff, during which time Juanino touched Plaintiff on her breasts, hips, and in between her legs. D.E. 131, ¶ 20; D.E. 131-7 at 15:18-16:10; D.E. 142, ¶¶ 12, 16; D.E. 155, ¶ 16. After the pat down, the disputed strip searched occurred. D.E. 131, ¶¶ 22-23; D.E. 142, ¶ 14. It is undisputed, however, that, whether of her own volition or at the behest of Juanino, Plaintiff lifted her dress and removed her underwear and a tampon. D.E. 131, ¶ 22; D.E. 142, ¶ 14. There is no evidence on the record that Juanino was expressly directed by anyone to perform a strip search of Plaintiff. D.E. 155, ¶ 16; *see* D.E. 142, ¶ 17, 19.

During the course of discovery in this case, Plaintiff propounded the following requests for admission to Defendant: "Admit that your contract does not give you the right to perform a strip search of a passenger," and "Admit that your policy guidelines do not permit you to strip search passengers." D.E. 142-9. Defendant denied both requests without further comment. *Id.*

## II. SUMMARY JUDGMENT

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). An issue is

genuine if "a reasonable trier of fact could return judgment for the non-moving party." *Miccosukee Tribe of Indians of Fla. v. United States*, 516 F.3d 1235, 1243 (11th Cir. 2008) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986)).  A fact is material if it "might affect the outcome of the suit under the governing law." *Id.* (quoting *Anderson*, 477 U.S. at 247-48).

The party moving for summary judgment shoulders the initial burden of showing the absence of a genuine issue of material fact. *Shiver v. Chertoff*, 549 F.3d 1342, 1343 (11th Cir. 2008).  The movant "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal quotation marks omitted).  Once the moving party satisfies this burden, "the nonmoving party 'must do more than simply show that there is some metaphysical doubt as to the material facts.'" *Ray v. Equifax Info. Servs., L.L.C.*, 327 F. App'x 819, 825 (11th Cir. 2009) (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)).  Instead, the non-moving party must produce evidence, going beyond the pleadings, and by its own affidavits, or by depositions, answers to interrogatories, and admissions on file, designate specific facts suggesting that a reasonable jury could find in his favor. *Shiver*, 549 F.3d at 1343.

On a motion for summary judgment, the Court views the evidence, including all reasonable inferences drawn from it, in the light most favorable to the non-moving party and resolves all reasonable doubts against the movant. *Rioux v. City of Atlanta, Ga.*, 520 F.3d 1269, 1274 (11th Cir. 2008); *Johnson v. City of Mobile*, 321 F. App'x 826, 830 (11th Cir. 2009).  The Court does not weigh conflicting evidence. *Skop v. City of Atlanta*, 485 F.3d 1130, 1140 (11th Cir. 2007), *reh'g and*

*reh'g en banc denied*, 254 F. App'x 803 (11th Cir. 2007). Nor does the Court determine the credibility of witnesses. *Jones v. UPS Ground Freight*, 683 F.3d 1283, 1292 (11th Cir. 2012) (citation omitted). "Cases in which the underlying issue is one of motivation, intent, or some other subjective fact are particularly inappropriate for summary judgment, as are those in which the issues turn on the credibility of the affiants." *Ala. Farm Bureau Mut. Cas. Co., Inc. v. Am. Fid. Life Ins. Co.*, 606 F.2d 602, 609 (5th Cir. 1979) (quoting *Slavin v. Curry*, 574 F.2d 1256, 1267 (5th Cir. 1978). Upon discovering a genuine material dispute, the Court must deny summary judgment and proceed to trial. *Jones*, 683 F.3d at 1292.

### III. DISCUSSION

**A. General Maritime Law Applies**

Both parties agree that general maritime law applies to Plaintiff's claims. See D.E. 131 at 8; D.E. 142 at 9. Similarly, Defendant does not contest that punitive damages are an available remedy under maritime law for a case of this type. D.E. 131 at 8. Thus, "a plaintiff may recover punitive damages under general maritime law, consistent with the common-law rule, where the plaintiff's injury was due to the defendant's 'wanton, willful, or outrageous conduct.'" *Lobegeiger v. Celebrity Cruises, Inc.*, No. 11-21620-CIV, 2011 WL 3703329, at *7 (S.D. Fla. Aug. 23, 2011) (citing *Atl. Sounding Co. v. Townsend*, 557 U.S. 404, 409-11 (2009)). Here, Plaintiff seeks punitive damages from Defendant based on Defendant's own conduct, as well as on the conduct of Defendant's employees. The Court will address each theory in turn.

**B. Defendant's Liability for the Conduct of Its Agents**

A principal may be held liable for punitive damages based on the conduct of its agents or employees if "(a) the principal or a managerial agent authorized the doing and manner of the act, or

(b) the agent was unfit and the principal or a managerial agent was reckless in employing or retaining him, or (c) the agent was employed in a managerial capacity and was acting in the scope of employment, or (d) the principal or a managerial agent of the principal ratified or approved the act." Restatement (Second) of Torts § 909 (1979); *see also Kolstad v. Am. Dental Ass'n*, 527 U.S. 526, 542-43 (1999) (discussing principal liability in the civil rights context). Defendant focuses its arguments primarily on the fact that the employees involved in the incident with Plaintiff are not employed in a managerial capacity but also asserts that Carnival has not authorized, approved, or ratified the security officers' conduct. D.E. 131 at 10; D.E. 155 at 6.

1. Managerial Capacity

Determining whether an employee is employed in a managerial capacity requires a "fact-intensive inquiry." *Kolstad*, 527 U.S. at 543. No comprehensive definition of what constitutes managerial capacity exists, but factors that inform the analysis include "the type of authority that the employer has given to the employee, the amount of discretion that the employee has in what is done and how it is accomplished." *Id.* (internal quotation marks omitted). Job titles alone are not dispositive of the issue, but employees must be "important." *Id.;see also Ash v. Tyson Foods, Inc.*, 664 F.3d 883, 901-02 (11th Cir. 2011) (citing *Miller v. Kenworth of Dothan, Inc.*, 277 F.3d 1269, 1280 (11th Cir. 2002) (noting an employee must be "far enough up the corporate hierarchy" to impute his actions to the employer and award punitive damages). Although some courts link managerial capacity to the ability to set company-wide policy, *see, e.g., Fitzgerald v. Mountain States Tel. & Tel. Co.*, 68 F.3d 1257, 1263 (10th Cir. 1995), the inquiry must still focus on the discretion and authority given to an employee by his employer. *See Kolstad*, 527 U.S. at 543.

Here, Defendant has simply not put forth sufficient facts to permit the Court to evaluate the level of discretion that Carnival has granted to its security employees in conducting searches of or otherwise dealing with passengers who possess illegal drugs onboard ship. Although Defendant conclusorily asserts that its security personnel have no discretion in the performance of their tasks, they have not pointed to any policy or guideline or to any testimony or evidence that concerns what level of discretion Carnival gives to its security employees when conducting searches. Defendant provides an excerpt from the testimony of Depositario, who stated simply that "we don't strip any guest on board." D.E. 131-6 at 8:4-5. However, this deposition fragment reveals only that Depositario, and anyone else to whom he might be referring, does not do strip searches; it does not indicate whether he has the discretion to make that decision. Nor does it indicate why Depositario does not conduct strip searches.

Defendant, instead, focuses on the fact that Thapa and Juanino are front-line employees, that Depositario and Yuzon are first-level supervisors, and that Negi, though Chief of Security for the ship, must still answer to the crew captain and ship captain. D.E. 155 at 8. Defendant asks the Court to infer from these positions that none of these individuals has discretion or policy-making authority. As noted above, though, position alone is not dispositive of the question of discretion, and Defendant has not pointed to sufficient facts to allow the Court to reach a conclusion one way or the other on what discretion Carnival has given to its security officers in the conduct of passenger searches. Put another way, the fact that these officers "follow directives and protocol from their supervisors," *id.*, does not necessarily mean that they could not also possess the discretion to ultimately determine Carnival's strip search policy.

Other information on the record also supports the existence of a genuine dispute of material fact concerning the discretion possessed by Defendant's employees in dealing with illegal narcotics onboard ship.  For example, Negi testified that when a crew member or passenger is discovered with illegal drugs, the procedure requires ship-board security to call Defendant's Security Services in Miami.  D.E. 131-10 at 2.  While Negi states that he follows whatever direction the Miami office provides, he notes that the directives from Miami vary from case to case.  *Id.* at 2:20-24.  This suggests that Carnival's security employees in Miami—employees who are apparently even higher in the corporate hierarchy than Negi—may have discretion on how they direct ship-board security to deal with particular incidents.

Other written documents from Carnival suggest some measure of discretion as well.  Carnival's ticket contract reserves "the right to enter and search [a] Guest's stateroom . . . or to search or screen any Guest."  D.E. 131-1 at 9, ¶ 8(g).  The contract does not indicate that such searches will be applied to all passengers or even all passengers found in possession of narcotics, suggesting a degree of discretion in deciding whether to conduct a search.  Carnival's Ship Security Manual is similarly unhelpful to Defendant's argument.  While the manual indicates that passengers found with drugs will be interviewed and the drugs confiscated, the manual (or at least the portions of it on the record) do not state that such a passenger or her cabin must be searched.  D.E. 154-2 at 1, § 4.3.2.  Similarly, the procedures outline search procedures for the ship's spaces but not for persons.  *Id.* § 4.3.3.  And even those search procedures encourage discretion: "The person doing the inspection must be resourceful in their search."  *Id.*

Because there are questions of fact concerning how much, if any, discretion has been given to Carnival's security personnel in carrying out searches of passengers, the Court cannot conclude

as a matter of law that none of these security personnel qualify as managerial agents. Accordingly, Defendant is not entitled to summary judgment on Plaintiff's punitive damages claims under this theory.

2. Authorization

Defendant also contests that it could be held liable for punitive damages because it did not authorize its security employees to conduct a strip search. D.E. 155 at 9-10. Carnival contends that it has no affirmative policy authorizing strip searches, *id.* at 10, and indeed nothing on the record reflects such an affirmative policy. Although Plaintiff points to Defendant's denial of a request for admission on whether its policies "do not permit" strip searches, such a denial does not equate to an admission of an affirmative policy. *See id.* at 10 (explaining Defendant's interpretation of its denial).

At the same time, however, the lack of an affirmative policy does not mean that strip searches are not authorized by Defendant. Carnival has pointed to nothing on the record indicating that its policies prohibit strip searches. As discussed above, the policy documents in the record reflect no guidelines for conducting searches of persons. D.E. 154-2 at 1, §§ 4.3.2, 4.3.3. In fact, Defendant's employees dispute what is permissible in conducting the pat-down searches, which themselves are not affirmatively authorized by anything on the record. *Compare* D.E. 142-2 at 8:12-20 (Depositario testifying that touching breasts and between the legs is improper on a pat down) *with* D.E. 142-5 at 7:18-21 (Juanino testifying that she must touch the breasts on a pat down).

Arguing that the lack of an affirmative strip-search policy means strip searches are not authorized requires drawing an inference in favor of Defendant—something that is improper on a motion for summary judgment. Accordingly, Defendant is not entitled to summary judgment on an authorization theory.

3. Approval or Ratification

Defendant's Motion conclusorily asserts that "there is no record evidence of any knowledge or ratification of [the security officers'] alleged misconduct by Carnival." D.E. 131 at 10. In response, Plaintiff avers that the approval of the search and the disembarkation of Plaintiff after reviewing the circumstances of the search constitute acts approving or ratifying the alleged misconduct. D.E. 142 at 11-12. Although Defendant denies that these acts are sufficient to demonstrate ratification, D.E. 155 at 9, Defendant offers no legal authority to support its conclusion. Accordingly, the Court denies summary judgment on the ratification issue.

**C. Defendant's Own Punitive Liability**

"[A] plaintiff may recover punitive damages under general maritime law, consistent with the common-law rule, where the plaintiff's injury was due to the defendant's 'wanton, willful, or outrageous conduct.'" *Lobegeiger v. Celebrity Cruises, Inc.*, No. 11-21620-CIV, 2011 WL 3703329, at *7 (S.D. Fla. Aug. 23, 2011) (citing *Atl. Sounding Co. v. Townsend*, 557 U.S. 404, 409-11 (2009)). The character of conduct that will support an award of punitive damages "must be of 'gross and flagrant character, evincing reckless disregard of human life, or of the safety of persons exposed to its dangerous effects.'" *Boney v. Carnival Corp.*, No. 08-22299-CIV, 2009 WL 4039886, at *2 (S.D. Fla. Nov. 20, 2009) (quoting *Chrysler Corp. v. Wolmer*, 499 So. 2d 823, 824 (Fla. 1986)).

As discussed above, there are material disputes in this case as to whether Defendant's employees conducted a strip search, including a cavity search, of a seventeen-year-old passenger and whether Defendant's policies permit such a search. If Defendant's employees performed such a search, the Court cannot conclude that Defendant's policies permitting the strip search of a minor, if supported by the facts at trial, do not rise to the type of "gross and flagrant" conduct that would

support the award of punitive damages. *Cf. Catalano v. GWD Mgmt. Corp.*, No. CV-403-167, 2005 WL 5519861, at *8 (S.D. Ga. Mar. 30, 2005) (finding a strip search of an employee by other employees to be "extreme and outrageous as a matter of law" and denying summary judgment to an employer on the plaintiff's intentional infliction of emotional distress claim).

## IV. CONCLUSION

For the foregoing reasons, it is **ORDERED and ADJUDGED** that Defendant's Motion for Partial Summary Judgment on Plaintiff's Claim for Punitive Damages [D.E. 131] is **DENIED**.

**DONE and ORDERED** in Fort Lauderdale, Florida, this 4th day of March 2013.

ROBIN S. ROSENBAUM
UNITED STATES DISTRICT JUDGE

Copies to:

The Honorable Barry S. Seltzer
Counsel of record